Bradford *vs.* Harris and Birckhead.

(Decided 14th March, 1893.)

JEFFERSON DAVIS BRADFORD *vs.* W. HALL HARRIS and LENNOX BIRCKHEAD, Assignees of THOMAS J. WILSON.

*Promissory note—Transfer—Failure of Consideration.*

In an action on a promissory note it appeared that the defendant placed it in the hands of certain brokers, agents for the sale of the stock, thereafter to be issued, of a company known as the Jordan Mountain Manganese Company, then in process of organization, with authority to purchase for him a hundred shares of the stock of the company. At the time the note was passed to the brokers the defendant took from them a certificate

which would have entitled him to receive the hundred shares of stock when issued or ready for sale. The whole enterprise fell through, and the defendant returned his certificate, but did not ask for the note. The brokers transferred the note to W. and it passed into the possession of his assignees under a deed of trust for the benefit of his creditors. One of the brokers testified that he informed W. at the time of passing the note to him, for what it was given, and the circumstances under which it was held, and reminded him that he W. knew all about the Manganese Company. W. held the note for more than a year and a half after its maturity, without any effort either to negotiate or collect it, or even to inquire of the defendant as to his ability to pay. HELD:

That there was evidence sufficient to be submitted to the jury to show that W. took the note with knowledge for what it was given and held by the brokers, and that there was no consideration for it.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiffs offered one prayer which will be found in the opinion of the Court, and the defendant offered the four following prayers:

1. That if the jury shall find from the evidence in the case, that the promissory note in question was placed in the hands of the firm of Whitely & Gaither, or in the hands of Seth H. Whitely, stock brokers, by the defendant, for the purpose of their purchasing for him, one hundred shares of stock of the Jordan Mountain Manganese Mining Company, and that at the time the said note was given, the said stock was not in existence, and never afterwards had an existence; and that the said Thomas J. Wilson had notice at the time of receiving said note from Whitely & Gaither, or from Seth H. Whitely, of the character and infirmity of said note as aforesaid, that then the plaintiffs, the assignees of Thomas

J. Wilson, cannot now recover against the defendant in this case.

2. That if the jury find from all the evidence in this case, that the promissory note in question, was placed in the hands of Whitely & Gaither, or Seth II. Whitely, to pay for stocks to be delivered by said Whitely & Gaither, or Seth H. Whitely, to the defendant, Jefferson D. Bradford; and shall further find that the said stock has never been delivered by said Whitely & Gaither or Seth H. Whitely to said Jefferson Davis Bradford, and that at the time of the delivery of said note to the said Thomas J. Wilson, he was told the purpose for which said note was placed in the hands of Whitely & Gaither or Seth H. Whitely, and was informed or then had knowledge that the stock was never delivered or had such knowledge of facts, that it was doubtful whether Whitely & Gaither or Seth H. Whitely could deliver such stock to said Jefferson D. Bradford, then the plaintiffs in this case cannot recover against the defendant.

3. That if the jury shall find from all the evidence in this case that the said note in question was placed in the hands of Whitely & Gaither or Seth II. Whitely, by the defendant Jefferson D. Bradford, for the purchase by them for him of one hundred shares of the Jordan Mountain Manganese Mining Company stock, and for no other purpose; and shall further find that at the time of the transfer to Thomas J. Wilson, he was told of that limitation of said note, and the authority under which the said Whitely & Gaither, or Seth H. Whitely, held said note as to the purpose for which said note was to be used by them, that the transfer of said note to the said Thomas J. Wilson, was a breach of duty on the part of the said Whitely & Gaither, and the reception of said note by Thomas J. Wilson, with such notice and under such circumstances was bad faith, and the plaintiffs in this case, the assignees of Thomas J. Wilson, cannot recover against the defendant.

4. That if the jury find from the evidence that the note sued on in this case was delivered by Whitely & Gaither to Thomas J. Wilson, merely to give him a lien upon the proceeds to arise from the sale of one hundred shares of stock of the Jordan Mountain Manganese Mining Company, should any such fund come into the hands of Whitely & Gaither which they were to purchase for Jefferson D. Bradford, and which they were then as his brokers to sell for him, and shall find that the note was so received by the said Thomas J. Wilson, and shall further find that no such stock was ever purchased by said Whitely & Gaither for said Bradford, and was never sold by them for him, and that no fund ever came into the hands of Whitely & Gaither to which such lien could attach; that then the plaintiffs in this case are not entitled to recover, and the verdict must be for the defendant.

The Court (HARLAN, J.,) granted the prayer of the plaintiffs and rejected the prayers of the defendant. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY, and BRISCOE, J.

*W. F. Porter*, and *Henry V. D. Johns*, for the appellant.

*Charles J. Bonaparte*, for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

This action was brought by the plaintiffs, as assignees of Thomas J. Wilson, to recover of the defendant the amount of a promissory note for $5,000, dated July 20th, 1888, and payable four months after date, with interest

at six per cent., value received. The defendant was maker of the note, and it was made payable to his own order, and indorsed by him in blank. This note, at the time of the making and indorsement, was delivered by the defendant to Whitely & Gaither, bankers and brokers in the City of Baltimore, who seem to have been agents for the sale of the stock, thereafter to be issued, of a company known as the Jordan Mountain Manganese Company, then in process of organization, or which, if completely organized, had not then issued and placed on the market its stock. The note, according to the testimony, was made and indorsed by the defendant, and placed in the hands of Whitely & Gaither, with authority to purchase for him 100 shares of the stock of the company at 50 per cent. of the par value thereof, the par value to be $100 per share. At the time the note was passed to Whitely & Gaither, the defendant took from them a certificate which would, according to its import, have entitled him to receive the 100 shares of stock when issued, or was ready for sale. The stock, it appears, never was validly issued, and the whole enterprise fell through or collapsed, and the shares of stock were never delivered to the defendant, and he, of course, never received any consideration for his note; but, strange to say, he did not require its cancellation or delivery up to him, though he returned to Whitely & Gaither the certificate given to entitle him to receive the stock. The defendant, who testified as a witness, says, that he returned the certificate to the brokers, but he did not ask for the note. His failure to do this, he says, "was simply due to oversight, not regarding the note, under the circumstances, as of any value. I never received any consideration whatever for the note."

This note, it appears, was handed over or passed by Whitely & Gaither to Thomas J. Wilson, the assignor of the plaintiffs, as partial security for a large pre-exist-

ing indebtedness then and still due to Wilson, or his assignees; but whether this transfer was before or after the maturity of the note, is left in some doubt on the evidence. It is admitted that Wilson, on the 28th of June, 1890, executed and delivered to the plaintiffs a deed of trust of all of his property for the benefit of his creditors, and that the note sued on came into the possession of the plaintiffs as assignees and trustees under that deed. The plaintiffs therefore can only maintain their right to recover in respect to the right that was in Wilson; for if Wilson received the note under such circumstances as would preclude him from recovery, if suit had been brought by him, it is very clear that the plaintiffs cannot recover, they standing alone on the right that was in Wilson, the assignor.

The defence of the defendant is that the note is totally without consideration; that the note was given for a special purpose to the agents of the defendant, and that that purpose has wholly failed; and that the transfer of the note to Wilson by the brokers was in violation of good faith and in fraud of the defendant; and that such transfer by the brokers to Wilson, whether before or after maturity, was with full knowledge on the part of Wilson, for what the note was given and held by the brokers, and that there was no consideration for it. And if this be so, it is clear there can be no recovery on the note by the plaintiffs.

The Court below instructed the jury, at the instance of the plaintiffs, that there was no evidence legally sufficient to be considered by the jury in support of the defence by the defendant, and that, under the pleadings, admissions and proof, their verdict must be for the plaintiffs, for the amount of the note with interest; and the Court rejected the prayers of the defendant, founded upon the supposed facts of the failure or want of consideration, and the knowledge on the part of Wil-

son of the special purpose for which the note was held by the brokers, and the want of consideration therefor, at the time of the transfer to him.

The transaction altogether was quite a remarkable one; but we discover nothing in it that would preclude the defendant from availing himself of the defence set up by him, if that defence be supported by evidence.

The objection to the note that there is a total want of consideration to support it, goes to the entire validity of the note and avoids it; and so where there was originally, not a want of consideration, but there has been a subsequent failure thereof. And therefore, in either case, if such defence be made out, it is fatal to the note in the hands of a party against whom such defence may be legally set up. But such defence is not available against every party who may hold the note. The general rule is that the original want or subsequent failure of consideration may be availed of as a bar to recovery as between any of the immediate or original parties to the contract; as in the case of maker against the payee, or by the payee against his immediate indorsee. And the same rule applies to any mere derivative title under them by any person, who acts merely as their agent, or has given no value for the note. It applies to all cases where the party takes the note, *even for value*, after it has been dishonored or is overdue; for then he takes it subject to all the equities, which properly attach thereto in the hands of the holder. *Annan vs. Houck*, 4 *Gill*, 325. And if the party taking the note has notice, at the time of the transfer to him, that the note is affected with the infirmity of the want or failure of consideration in the hands of the party from whom he obtains it, or that such party is disposing of the note in fraud of a party for whom he holds it, the party so taking the note will take it subject to all the equities and defences that could be availed of as against the party so disposing of or trans-

ferring the note. These principles are familiar, and are not open to question. *Sto. Prom. Notes, secs.* 187, 190. But it is equally beyond question that a party will be protected as holder of negotiable paper, although it be fraudulent or without consideration, if he has received it before maturity, in good faith, and for value, without notice of the infirmity in the paper. And, according to the settled doctrine of this Court, an antecedent indebtedness for which such paper may be taken as security, will form a valuable consideration for its transfer. The question here is, therefore, whether Wilson, at the time he received the note sued on, had such notice of the alleged infirmities of the note as would make it subject to the defence relied on by the defendants; and this depends upon the facts of the case.

We have examined the entire evidence with care, and we are all of the opinion that there is evidence that should have been submitted to the jury, and that, consequently, there was error in directing a verdict for the plaintiffs.

There is no pretence that the defendant did in fact receive any consideration for the note placed in the hands of the brokers. Whitely, one of the brokers, testifies very explicitly that he informed Wilson, at the time of passing the note to him, for what the note was given, and the circumstances under which it was held, and reminded him at the same time that he, Wilson, knew all about the Manganese Company. Wilson, therefore, knew, if this witness is to be believed, that the defendant had received nothing for the note, and that the brokers had no authority to transfer the note to him, under the circumstances of the case. It would seem that Wilson himself was concerned in the company, or with the stock that was designed to be issued; for in another part of his testimony, in referring to the occasion of transferring the note to Wilson, Whitely

Bradford *vs.* Harris and Birckhead.

says: "I explained it to him at that time what it (the note) was given for, and stated to him that he knew all about the Manganese Company, and knew what brilliant prospects there were of making a great deal of money out of it, *both for himself and ourselves,* and that when that was closed up there would be very little difference between us. He had loaned us quite a large amount of money, and we expected to reimburse out of the profits of this Manganese Company, and divide whatever difference there was after reimbursing him." There are other circumstances tending to the same conclusion, but which are not necessary to be stated in detail. There is one circumstance, however, that may be mentioned, of some significance, and that is that Wilson should have held the note for more than a year and a half after its maturity, without any effort either to negotiate or collect it, or even to enquire of the defendant as to his ability to pay. Wilson, doubtless, could have explained this, but he was not examined as a witness.

We think there was error in granting the prayer on behalf of the plaintiffs, and in refusing to grant the first, second and third prayers offered by the defendant. The fourth prayer of the defendant is based upon a theory that may not be sufficiently supported by the evidence; and in our view of the case it is not material.

*Judgment reversed, and
cause remanded for
a new trial.*

(Decided 14th March, 1893.)