GOLDMAN *v.* JOHNSON MOTOR LINES, INC., ET AL.

[No. 53, October Term, 1948.]

*Decided January 13, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Jacob D. Hornstein,* with whom was *Bernard B. Feikin* on the brief, for the appellant.

*Robert E. Coughlin, Jr.,* for appellee, J. P. Kimrey.

*James J. Lindsay, Jr.,* for appellee, Johnson Motor Lines, Inc.

COLLINS, J., delivered the opinion of the Court.

Albert Goldman, plaintiff, appellant here, sued L. R. Christopher, J. P. Kimrey, and Johnson Motor Lines, Inc., in the Superior Court of Baltimore City for damages as the result of an automobile accident. The demurrer prayer of L. R. Christopher was granted at the close of the plaintiff's case and no appeal is taken from that action of the trial court. The jury brought in a verdict for the appellees J. P. Kimrey and Johnson Motor Lines, Inc., and from a judgment on that verdict the appellant appeals here.

As the primary question for our decision is whether the trial judge should have submitted to the jury the question of contributory negligence on the part of the appellant, we will recite the facts in a manner most favorable to the appellees.

About 1 A. M. on January 22, 1946, the appellant, Albert Goldman, and his wife were returning in their De-Soto automobile from Washington to their home in Baltimore. The automobile was operated by the appellant. Somewhere in the vicinity of Halethorpe on the Washington Boulevard the accident occurred. From the testi-

mony it is difficult to determine the width of the Washington Boulevard at that point. However, L. R. Christopher testified that two cars can travel southbound on the southbound lane toward Washington. He said he could not judge the distance and does not know whether three cars could travel southbound in that southbound lane or not. He did not know about the width of the northbound lane toward Baltimore. Mrs. Flora Goldman, the wife of the appellant, testified that three cars "could go in either direction along side of each other. I think three on each side." From this testimony it therefore appears that at the scene of the accident the Washington Boulevard is a four lane highway. The appellant testified that there was a side fence on both sides of the road because there is a steep decline behind that fence. The appellant also testified that he was driving about twenty-five miles an hour because it was "dangerous to drive", a "miserable" night, it was "drizzling" and there was about a half inch of snow on the road.

In the vicinity of Halethorpe, where the road was level, a Chevrolet truck, owned by L. R. Christopher, passed the appellant at a rate of fifty to sixty miles an hour. This passing truck threw snow on the appellant's windshield. After the snow had dissolved appellant saw Christopher's truck collide head-on with an automobile driving toward Washington which later proved to be a Lincoln Zephyr. There is a slight elevation in the road just before reaching the scene of the accident. The Lincoln Zephyr was knocked across the road with its rear against the fence or guard rail on the Baltimore bound side of the road and its front end sticking out five or six feet in the Baltimore lane of traffic. The Lincoln after the accident had at least one headlight on and was pointed at a slight angle toward Washington with its rear left door about two feet from the fence. Appellant says he drove his DeSoto automobile past the scene of the accident and parked it about fifty feet beyond the Lincoln Zephyr and as close to the side of the road as he could. Christopher, however, stated that Goldman

left his car on the right side of the road but it lacked about five or six feet being off the concrete road. Goldman's car was parked about fifty feet behind Christopher's truck. Christopher says he left his truck in the center of the Washington Boulevard with all six red rear lights burning. The appellant's car was parked fifty feet beyond the Lincoln Zephyr and fifty feet behind the Christopher truck. The distance then between the Christopher truck and the Lincoln Zephyr was about one hundred feet. Goldman then got out of his car and went back to render what aid he could to the passengers in the Lincoln. When he approached that car the occupants were "screaming". He went around to the left rear door of the car and stood in the two foot space between the automobile and the fence and tried to open the left rear door of the wrecked automobile. Christopher and his helper were then on the right hand side of the Lincoln Zephyr trying to open the doors on that side. Christopher saw the Johnson tractor-trailer coming from Washington and called to Goldman: "Look out, there is another truck coming". The Johnson tractor-trailer hit the Lincoln Zephyr a "glancing lick" and moved it slightly toward the guard rail where Goldman was standing. Goldman was knocked down and dragged, Goldman says, about ten or twelve feet. The Johnson tractor-trailer then crashed into the rear of the parked Goldman car in which Mrs. Goldman was sitting. Christopher testified on re-direct examination that after Goldman parked his car back of the Christopher truck there was no space on either side of those vehicles for any other traffic to get by. He said: "After Mr. Goldman came in there; it was just two roads, one going north and one going south. He stayed on the road, he didn't pull over to the side." He said Goldman's car blocked the road and there was no way for the Johnson tractor-trailer to get by. However, on re-cross examination Christopher testified that Goldman's car was on the right-hand side of the road but it lacked about five or six feet being "off the road".

Appellant contends that the trial court erred in refusing to allow him to testify as to the previous profits from his business or to establish the effect of his disability on the operation of that business, thereby precluding appellant from proving the loss of earnings resulting from his injuries. It was proper, of course, for the appellant to show his loss of earnings resulting from the accident. We agree, however, with the ruling of the trial judge on the questions propounded by the appellant. Those questions were too vague, indefinite and general to lay a proper foundation for the questions asked. Some of the questions asked called for conclusions of the witness. The appellant should previously have shown the nature of his business and laid a proper foundation for the questions. *Baltimore & O. R. Co. v. Thompson,* 10 Md. 76, 83, 84; *Evans v. Murphy,* 87 Md. 498, 503, 504, 40 A. 109; *Snowden v. State,* 133 Md. 624, 634, 106 A. 5; *State, for Use of Thompson v. Emerson & Morgan Coal Co.,* 150 Md. 429, 444, 133 A. 601; *Fleischman Transp. Co. v. Egli,* 163 Md. 663, 164 A. 228; *Burch v. Prudential Ins. Co.,* 184 Md. 664, 671, 42 A. 2d 671, 163 A. L. R. 1466. At the retrial of the case such a proper foundation can be laid.

Appellant further contends that the trial judge should have instructed the jury as to the doctrine known as the "rescue doctrine". There is nothing in the record to show that appellant requested the trial judge to instruct the jury on that doctrine, or that he made any objection to the instruction on that ground to the trial judge. We are therefore unable to pass upon that question on appeal. Rule 6(c) of the General Rules of Practice & Procedure, part three, Section III; *Fisher v. Baltimore Transit Co.,* 184 Md. 399, 402, 41 A. 2d 297.

The trial judge in his instructions to the jury made the following statement: "As to contributory negligence, however, the burden is on the defendant. The defendant has the burden of proving that the plaintiff in the case was guilty of contributory negligence, that is proving it by a fair preponderance of the evidence, and as I said

before, by that term is meant the evidence that is most satisfactory to your minds, and most convincing, and if you are unable to determine whether contributory negligence existed or not you would have to conclude that it did not." The attorney for the appellant excepted to that part of the charge on the ground that there was no testimony produced of any contributory negligence. The trial judge refused to amend his charge.

In his brief the appellant apparently abandoned this objection to the charge and stated: "Appellant does not now contend that it was error to submit the question of contributory negligence to the jury." However, in the argument in this Court he contended that the question of contributory negligence should not have been submitted to the jury and as this objection was presented to the trial judge, it is properly before us on appeal. Rule 6(c) of the General Rules of Practice and Procedure, Part three, Section III, *supra.*

We are of the opinion that there was not sufficient evidence of contributory negligence on the part of the appellant to submit that question to the jury. Of course, the burden of proof of contributory negligence on the part of the appellant is upon the defendant. *Wintrobe v. Hart,* 178 Md. 289, 297, 13 A. 2d 365; *Gloyd v. Wills,* 180 Md. 161, 165, 23 A. 2d 665.

Although contributory negligence is ordinarily a question for the jury, unless there be some evidence of negligence of the plaintiff contributing to the happening of the accident beyond a mere scintilla, or evidence from which negligence may be legally inferred by reasonable persons, there is nothing which justifies the submission of plaintiff's negligence to the jury. *Hopper, McGaw & Co. v. Kelly,* 145 Md. 161, 170, 125 A. 779; *Greer Transp. Co. v. Knight,* 157 Md. 528, 539, 146 A. 851; *Baltimore Transit Co. v. State,* 184 Md. 250, 40 A. 2d 678.

The trial judge was of opinion because of weather conditions; because of the question of whether flares were on the road at the time of the accident; because the Lincoln Zephyr automobile, near which the appellant

was standing, was partly on the hard surface of the highway and on the wrong side thereof; and because Christopher had seen the approaching tractor-trailer and jumped away from the Lincoln Zephyr, there was evidence from which the jury might infer that a person of ordinary care in the position of the appellant and under the conditions then existing would have sensed the collision and moved away from the automobile before the collision occurred. However, according to all the evidence the appellant was off the concrete road or at least in the two foot space between the Lincoln Zephyr and the guard rail. Standing in this position he had no reason to believe that he would be struck. The fact that Christopher saw the on-coming tractor-trailer is no evidence that Goldman should have seen it. Christopher, pulling on the right front door of the Lincoln Zephyr, was naturally facing in the direction from which the tractor-trailer was approaching. Goldman, pulling on the left rear door, was naturally facing in the other direction.

In this Court Johnson Motor Lines, Inc., stressed the fact that the contributory negligence of Goldman was a question for the jury because Goldman parked his car fifty feet beyond the Lincoln Zephyr on the right side of the road with five or six feet of the automobile on the concrete and because under Christopher's statement the road was blocked and there was no room for the Johnson tractor-trailer to get by.

Contributory negligence assumes the existence of negligence of the defendant, and is such negligence on the part of the plaintiff as directly contributes to his injury and prevents recovery. *Reed v. Mayor and City Council of Baltimore,* 171 Md. 115, 123, 188 A. 15. Where negligence is relied upon as a defense to bar recovery for an injury resulting from an accident such negligence must have been concurrent and the proximate cause of the injury complained of. If negligence of the defendant is the proximate, and that of the party injured the remote, cause of the injury, the action is maintainable, not-

withstanding the party injured may not have been entirely without fault. *Kelly v. Huber Baking Co.*, 145 Md. 321, 340, 125 A. 782. If there was such a blocking of the road it occurred at least fifty feet beyond the scene of the collision. It is apparent, even if the road was blocked fifty feet beyond the scene of the accident, that this would not directly contribute to the collision between the Lincoln Zephyr and the Johnson tractor-trailer. From Christopher's testimony it appears that the Washington Boulevard was a four lane highway at the scene of the accident. Although Christopher said after Goldman parked his car the road was blocked, yet it is difficult to understand why the Johnson tractor-trailer could not have pulled to the left of Goldman's DeSoto automobile and Christopher's Chevrolet truck and proceeded toward Baltimore. There is no evidence in the case that any vehicle was approaching from Baltimore. With Goldman's car extending only five or six feet on the four lane highway and with Christopher's truck parked in the center of the Washington Boulevard, a road wide enough for four lane traffic, it appears that there was ample room for the Johnson tractor-trailer to pull to the left of all of these automobiles and proceed on its way to Baltimore. Christopher's testimony that Goldman's car "blocked the road", under the physical conditions at the scene of the accident, is so contradictory and inconclusive as to be unworthy of consideration. *Baltimore Traction Co. v. Helms*, 84 Md. 515, 526, 36 A. 119, 36 L. R. A. 215; *Baltimore & O. R. Co. v. Bruchy*, 161 Md. 175, 179, 180, 155 A. 346. We are of opinion that to leave the question of Goldman's contributory negligence to the jury would be submitting a question of pure speculation and conjecture which should not be done. There is no evidence beside speculation that the position of appellant's car was a contributing cause of the accident. The judgment in favor of Johnson Motor Lines, Inc., will therefore be reversed and a new trial awarded.

Appellee, Johnson, contends that as a verdict was found in its favor it took no appeal, but that a new trial should not be awarded because the lower Court might properly have directed a verdict for Johnson and therefore any error as to contributory negligence was not prejudicial or reversible error. However, there appears to have been sufficient evidence of primary negligence on the part of Johnson Motor Lines, Inc., to submit the case against it to the jury. The evidence is clear that the road was dangerous, covered with ice and snow. There was a "drizzle" and clear vision on the road was obscured. There is also evidence that vision was obstructed by a slight elevation in the grade of the road.

It was said by this Court in the case of *People's Drug Store v. Windham,* 178 Md. 172, at page 185, 12 A. 2d 532, at page 538: "One who operates a motor vehicle on the public highway must anticipate the presence of others thereon, and must exercise constant vigilance to avoid injuring them, and if his view is obstructed by smoke, fog, rain, snow, sleet, or other atmospheric conditions, he must so operate it as to be able by the exercise of reasonable care, to avoid injuring others themselves in the exercise of ordinary care. It is said in *5 Am. Jur.* 653, that: 'The driver of an automobile whose vision is obscured by dust, smoke, or atmospheric conditions, such as fog, snow or heavy rain, must exercise care commensurate with the situation. The degree of care varies with the conditions creating the obstructed vision, the roadway, and traffic conditions. * * *' "

As to the liability of appellee, J. P. Kimrey, we are of opinion that there is ample evidence in the record to prove that, although, as alleged in the declaration, Kimrey was the owner of the tractor-trailer at the time of the accident, and although there is a presumption that the driver of an automobile is the agent and servant of the owner, that presumption was rebutted by uncontradicted and conclusive evidence sufficient for the court to declare non-liability of the owner, Kimrey, as a matter of law. *Phipps v. Milligan,* 174 Md. 438, 440, 199 A. 498;

*National Trucking & Storage, Inc., v. Durkin,* 183 Md. 584, 588, 39 A. 2d 687. Kimrey proved by uncontradicted and indisputable evidence that the operator of the motor vehicle at the time of the accident was not his agent and servant and also that the vehicle was not engaged in his business. There was, therefore, no reversible error as against Kimrey. *State v. Green,* 4 Gill & J. 381, 384, 385; *Morgan v. Morgan,* 4 Gill & J. 395, 401; *Ramsay v. Glass,* 9 Gill 56, 60, 61, 62; *Mudd v. Harper,* 1 Md. 110, 115, 116, 54 Am. Dec. 644; *Cline. v. Miller,* 8 Md. 274, 287; *Elliott v. Knott,* 14 Md. 121, 135, 74 Am. Dec. 519; *Deutsch v. Bond,* 46 Md. 164, 171; *Hart v. Vogel,* 159 Md. 145, 147, 148, 150 A. 261.

The judgment will therefore be affirmed as to Kimrey and reversed and a new trial awarded as to Johnson.

> *Judgment affirmed in favor of J. P. Kimrey, with costs. Judgment in favor of Johnson Motor Lines, Inc., reversed, with costs, and a new trial awarded.*